VEHICLE SUPPLY COMPANY *v.* McINTURFF.

Opinion delivered November 1, 1915.

SALES—CONVERSION—DELIVERY WITHOUT SURRENDER OF BILL OF LADING—
LIABILITY TO SELLER FOR VALUE.—A was indebted to B in a certain
sum.   Thereafter A shipped merchandise to the town of B's resi-
dence consigned to A's order.   The goods were intended for B and
A drawing a draft on B, attached the same to the bill of lading and
delivered the same to his bank for collection.   The carrier turned
the goods over to B without a surrender of the bill of lading, and
B appropriated the same, applying the value thereof on the debt due
to him by A.   *Held*, under the facts B had no right to make such an
application of the purchase price, and that A could recover from
him the value of the goods converted.

Appeal from Chicot Circuit Court; *Turner Butler,*
Judge; affirmed.

*B. F. Merritt,* for appellants.

The rule of law where a chattel mortgage is acknowl-
edged and recorded in accordance with the laws of the
State where the property is located, and is removed by
the mortgagor to another State, the mortgagee may en-
force his mortgage in the latter State against third par-
ties who may have acquired rights in the property, ap-
plies only where the property was removed without the
consent of the mortgagee.   31 Ark. 32; 73 Ark. 16.

*J. C. Gillison,* for appellee.

There is no proof that appellee consented to the re-
moval of the property beyond its control, or that it ever
was beyond its control.   On the contrary the proof is
that McInturff removed the property only upon condition
that the drafts made up by him be paid by the party tak-
ing possession of the shipments.   The question of con-
sent is not material unless made so by statute.   104 Fed.
449.

This is not a suit for recovery of property, but for
conversion.   Appellee could recover for conversion the
full value of the property, and account to McInturff for
the surplus, if any, the same as if the property had been
sold under the mortgage.   McInturff, also, might have

recovered for the full value of the property, since appellants could not have taken possession of the property and applied it to its own use or the payment of the debt due it without his consent, or some process of law. 29 Ark. 365; 93 Ark. 521.

HART, J. On the 8th day of January, 1915, S. J. McInturff and the Chicot Bank and Trust Co., instituted an action against the Vehicle Supply Company, a partnership composed of M. S. and C. C. Carter, doing a vehicle supply business in the city of Cairo, Illinois, and against the St. Louis, Iron Mountain & Southern Ry. Co., for the recovery of $1,331.26 alleged to be the value of three car loads of axles wrongfully delivered by the railway company to its co-defendant and converted by it to its own use. One of the partners came to Chicot county, and service was had upon him there. The defendants answered.

The facts are as follows: S. J. McInturff was in the employment of the Vehicle Supply Company in connection with the business at Cairo, Illinois. He found some timber near Lake Village, Arkansas, out of which he thought he could make some money, and the Vehicle Supply Company desiring the lumber, agreed to lend him one thousand dollars on which to operate. He gave the Vehicle Supply Company a mortgage on some land in Oklahome as security and also agreed to pay the firm out of the proceeds of lumber shipped to it. He established a saw mill at Lake Village, Arkansas, and on the third day of June, 1914, executed a mortgage to the Chicot Bank and Trust Company on all the manufactured lumber in his mill yard at Lake Village, Arkansas, to secure the sum of $650 and future advances. In September, 1914, McInturff shipped to himself at Cairo, Illinois, three car loads of axels of the value of $1,331.26 and gave the Chicot Bank and Trust Company a draft for the proceeds of the cars of lumber and attached it to the bills of lading. The bills of lading with the draft attached were delivered to the Chicot Bank and Trust Company and by it forwarded to the bank at Cairo, Illinois, with directions

to deliver the bills of lading to McInturff or order upon the full payment of the draft. The railroad company delivered the three cars of axles to the Vehicle Supply Company and the members who composed that firm applied the proceeds to the payment of the debt due the firm by McInturff and refused to account to the Chicot Bank and Trust Company for the proceeds.

The railroad agent at Lake Village testified that he had a message from the railroad agent at Cairo, Illinois, stating that the cars were on hand and asking for a disposition of the axles; that he called up McInturff and asked for a disposition of the axles and that McInturff told him that the Vehicle Supply Company knew that the cars were there and would take them up; and that he then told McInturff that he would wire the agent at Cairo to notify the Vehicle Supply Company and that McInturff replied that that would be all right.

The agent of the railroad company at Cairo, Illinois, testified that the bills of lading for the cars in question were what the Interstate Commerce Commission approved as being a straight bill of lading and that they are not negotiable documents; and that there was a form prepared and approved by the commission called an uniform order bill of lading which was for the purpose of enabling shippers to draw on the goods shipped, and that this bill of lading was negotiable.

Evidence was also adduced by the defendant tending to show that the axles contained in the three cars did not amount to the value of $1,331.26.

On the other hand McInturff testified that he inspected the cars shipped by him, that he picked out number one stock and that the timber was worth the amount sued for by him and the bank. He also testified that he remembered the railroad agent at Lake Village calling him up with reference to the shipment and says that he told the agent that the goods were consigned to himself and that he made a sight draft on the Vehicle Supply Company and that if the Vehicle Supply Company want-

ed the cars it must pay the draft and take up the bills of lading.

The cashier of the bank testified that he had furnished McInturff the sum sued for in this action and that the amount was due and unpaid but that McInturff had paid the bank all other sums due under the mortgage except the sum sued for in this action.

The jury returned a verdict in favor of the plaintiffs against the Vehicle Supply Company for the amount sued for; and from the judgment rendered the Vehicle Supply Company has duly prosecuted an appeal to this court.

It is the contention of the Vehicle Supply Company that because the mortgagee consented to the mortgagor removing the mortgaged property from the State, it waived its lien as against the Vehicle Supply Company.

This court has not decided as to whether or not the mortgagee's consent to the removal of mortgaged property from the State will affect his lien. *F. E. Creelman Lumber Co.* v. *Lesh,* 73 Ark. 16. The authorities on the question are divided and extensive case notes will be found in connection with the following cases: *Snider* v. *Yates,* 64 L. R. A. 353; *Jones* v. *North Pacific Fish & Oil Co.,* 6 L. R. A. (N. S.) 940; *Farmers & Merchants State Bank* v. *Sutherlin,* 93 Neb. 707, 32 Am. & Eng. Ann. Cas. 1250.

The views, however, which we shall hereinafter express render it unnecessary for us to review the authorities or determine the question and we shall not attempt to do so.

The court submitted to the jury under proper instructions, the question of whether or not the railroad company wrongfully delivered the property to the Vehicle Supply Company and whether or not the firm converted the three car loads of axles to its own use. The jury found against the Vehicle Supply Company on this question and there is evidence to support the verdict. It is true the railroad agent testified that McInturff directed him to have the cars of axles turned over to the Vehicle Supply Company, but in this McInturff flatly contradicts

him.  McInturff testified positively that he told the agent not to turn over the three cars unless the supply company paid the amount of the draft which he had drawn in favor of the Chicot Bank and Trust Company.  The Vehicle Supply Company failed to pay this draft but took possession of the three cars of axles and converted them to its own use.  The cars were consigned by McInturff to himself and he delivered the bills of lading therefor with draft attached to the Chicot Bank and Trust Company.  It is true the railroad agent says that the bills of lading were not negotiable, but, be that as it may, the bill of lading is regarded as a symbol of the property described therein and its delivery by McIntruff to the bank was equivalent to a delivery of the property as far as they were concerned.  No rights of third parties have intervened.  According to the testimony of McInturff the railway company wrongfully delivered the cars of axles to the Vehicle Supply Company and the firm converted the axles to its own use.  As we have already seen this question was submitted to the jury under proper instructions and the jury found against the Vehicle Supply Company.  The case then stands as if the Vehicle Supply Company had wrongfully received the three car loads of axles and converted them to its own use, by applying the proceeds of the car to the debt due it by McInturff.  It had no right to apply the proceeds of these three cars to the payment of its debts unless directed to do so by McInturff.  The cars were consigned to him and were subject to his order.  They never rightfully came into possession of the Vehicle Supply Company and for that reason it did not stand in the position of a third person acquiring rights without notice as against the bank.

It is urged by counsel for the Vehicle Supply Company that the court erred in refusing certain instructions asked by it.  But, without setting these instructions out in detail, it is sufficient to say that they are contrary to the principles of law just announced.

The judgment will be affirmed.